# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 14-0916** (Ohio County 14-F-4)

**Heyward Thomas Bazar, Jr.,**
**Defendant Below, Petitioner**

**FILED**

November 20, 2015
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Heyward Thomas Bazar, Jr., by counsel Richard W. Hollandsworth, appeals his conviction for the offense of battery, claiming that his rights under the Confrontation Clause of the Sixth Amendment of the United States Constitution were violated, in that the victim in the matter did not testify. Respondent State of West Virginia, by counsel Gail W. Kahle and Scott R. Smith, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On November 22, 2013, officers from the Wheeling Police Department were dispatched to a house at 716 Main Street, Wheeling, West Virginia in response to a call regarding a domestic disturbance. The house was a boarding-style house where petitioner lived in the basement with Jennifer Thomas (hereinafter referred to as "Ms. Thomas" or "the victim"). Once there, the officers were directed to a bedroom where they encountered Ms. Thomas. According to Officer Erick Burke, Ms. Thomas was crying hysterically and bleeding profusely from the side of her head. Officer Burke later testified as follows regarding his conversation with Ms. Thomas at the scene:

Q. At this point in the investigation, did you know how this came about?

A. No sir.

Q. Was it important for you as a police officer to find out how this traumatic event came about?

A. Yes, sir.

1

Q. And did you make inquiry to find out how this came about?

A. Yes, sir we did.

Q. And how – please describe for the jury.

A. First we asked her who had done this to her, and she responded, I said, Heyward Bazar," that (sic) beat her. And because of the severity and because of how much blood there was, we asked her what she was beat with.

Q. Because you assumed it was something other than fists.

A. Yes, sir.

Q. And what was her response on that?

A. That she had been punched.

Petitioner was located in the backyard of the house and placed under arrest. On January 13, 2014, petitioner was indicted for the offense of malicious assault. At trial, Robert Chadwick, petitioner's neighbor in the boarding house, testified to the events of the evening. Mr. Chadwick stated he first heard a lot of commotion outside of his bedroom door, and realized that it was Ms. Thomas trying to come inside. When he opened the door, he saw Ms. Thomas with petitioner behind her, holding Ms. Thomas's hair. Mr. Chadwick did not allow her to enter initially.

Also at petitioner's trial, Mrs. Debra Chadwick, Mr. Chadwick's wife, testified that she was in the bedroom with her husband when they heard commotion outside. She testified that she observed petitioner hit Ms. Thomas, and knocked her into a doorway. Mrs. Chadwick also testified that Ms. Thomas was bleeding from her head, and appeared terrified, very scared, and in pain.

Ms. Thomas was transported to the Ohio Valley Medical Center, where she was treated for her injuries. Emergency Trauma Nurse Angela McCort assessed Ms. Thomas' injuries. Nurse McCort testified that as a triage nurse, it was important to get an accurate medical history from the patient. Nurse McCort testified that Ms. Thomas told her that she was "assaulted by her boyfriend," and that her boyfriend "had hit her multiple times," and " had choked her." Petitioner did not testify and did not present any witnesses.

The jury received instructions on the offense of malicious assault and the lesser included offense of unlawful assault and battery. The jury convicted petitioner of the lesser included offense of battery, and the circuit court sentenced petitioner to one year in jail. Petitioner appeals his conviction.

Petitioner asserts two assignments of error in this appeal. Petitioner claims that because Ms. Thomas ("the victim") did not testify at trial, the circuit court erred by allowing Investigating Officer Burke to testify to statements made by the victim; and erred by allowing

2

Nurse McCort to testify to statements made by the victim. Petitioner claims that this evidence prejudiced his constitutional rights, and that he is entitled to a new trial as a result of these violations.

> "In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review." Syllabus point 3, *State v. Vance,* 207 W.Va. 640, 535 S.E.2d 484 (2000).

Syl. Pt. 2, *State v. White*, 228 W.Va. 530, 722 S.E.2d 566 (2011). We have stated that the "'[f]ailure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt.' Syllabus Point 5, *State ex rel. Grob v. Blair,* 158 W.Va. 647, 214 S.E.2d 330 (1975). *In accord,* Syllabus Point 14, *State v. Salmons,* 203 W.Va. 561, 509 S.E.2d 842 (1998)." *State v. Mechling*, 219 W.Va. 366, 371, 633 S.E.2d 311, 316 (2006)

Petitioner first claims that the trial court erred by admitting testimony from the investigating officer regarding statements made by the victim. In his testimony, the investigating officer testified that the victim told him that petitioner committed the offense against her. Petitioner claims that this testimony violated his constitutional rights under the Confrontation Clause of the Sixth Amendment of the United States Constitution.[1] Relying upon syllabus points eight and nine of *Mechling*, petitioner asserts that the statements admitted were testimonial in nature, constituted hearsay, and that in order for the testimony to be admitted, the victim must have testified to the substance of the statement at trial.

> [A] confrontation clause inquiry is twofold. First, a court should determine whether the contested statement by an out-of-court declarant qualifies as testimonial under *Crawford* and its progeny. Second, the court should apply the appropriate safeguard. If the absent witness's statement is testimonial, then the Confrontation Clause requires unavailability and a prior opportunity for cross-examination. If the statement is nontestimonial, admissibility is then governed solely by the rules of evidence.

---

[1] The Sixth Amendment of the United States Constitution or "Confrontation Clause" reads as follows:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

3

Louis J. Palmer, Robin Jean Davis & Franklin D. Cleckley, Handbook on Evidence for West Virginia Lawyers 361 (6th ed. 2015). "Under *Crawford* [*v. Washington*, 541 U.S. 36 (2004)] and this Court's decision in *Mechling*, 'only "testimonial statements" cause the declarant to be a "witness" subject to the constraints of the Confrontation Clause. *Non-testimonial statements by an unavailable declarant, on the other hand, are not precluded from use by the Confrontation Clause.' Mechling*, 219 W.Va. at 373, 633 S.E.2d at 318 (emphasis added)." *State v. Kaufman*, 227 W.Va. 537, 550, 711 S.E.2d 607, 620 (2011). In syllabus point nine of *Mechling*, we held,

> Under the Confrontation Clause contained within the Sixth Amendment to the United States Constitution and Section 14 of Article III of the West Virginia Constitution, a witness's statement taken by a law enforcement officer in the course of an interrogation is testimonial when the circumstances objectively indicate that there is no ongoing emergency, and that the primary purpose of the witness's statement is to establish or prove past events potentially relevant to later criminal prosecution. A witness's statement taken by a law enforcement officer in the course of an interrogation is non-testimonial when made under circumstances objectively indicating that the primary purpose of the statement is to enable police assistance to meet an ongoing emergency.

219 W.Va. at 368-69, 633 S.E.2d at 313-14.

We find that the testimony of the investigating officer regarding the victim's statements was not testimonial in nature. The evidence reveals that the investigating officer arrived on the scene to find the victim bleeding profusely from her head at the rooming house she shared with petitioner. The officer asked questions of the victim to determine what was going on. In response to that inquiry, the victim stated that petitioner beat her. This evidence was clearly gathered from the officer in order to address an ongoing emergency. *See State v. Surbaugh*, 230 W.Va. 212, 737 S.E.2d 240 (2012). In addition, we find that the rule against hearsay evidence was not violated as the statements were not admitted for the truth of the matter asserted. *See* Rule 801(C) of the West Virginia Rules of Evidence. The officer's testimony regarding the victim's statements explained why and how petitioner was arrested for the offenses charged.

Even if we found the statement was inadmissible, the admission of the statement was harmless error. *See State v. Bowling*, 232 W.Va. 529, 753 S.E.2d 27(2013). There is substantial evidence on the record to support petitioner's conviction, excepting the subject testimony from the investigating officer. Mr. Chadwick testified at trial that on November 22, 2013, he heard a male voice yelling outside of the door to the room he was renting with his wife. Mr. Chadwick further testified that when he opened the door to the room, petitioner was standing in the hallway, holding the victim by her hair with his right hand. Mrs. Chadwick testified at trial that prior to her husband opening the door, that she heard the victim "raving and screaming," and that she heard sounds that she believed were petitioner hitting the victim. Once her husband opened the door, Mrs. Chadwick testified that based upon the sounds she heard, she believed petitioner knocked the victim into the doorway. Further evidence introduced at trial consisted of a photograph that depicted blood on Mr. and Mrs. Chadwick's doorway. Both parties testified that the victim's face was very bloody when they finally allowed her into their room and called the police. This evidence alone, independent of the testimony by the investigating officer, was sufficient to support the jury's verdict.

4

Similarly, petitioner asserts that his constitutional rights under the Confrontation Clause were violated by the testimony of Nurse McCort. Petitioner claims that these statements were out of court hearsay statements which were also subject to the Confrontation Clause. We disagree.

> "Under the Confrontation Clause contained within the Sixth Amendment to the *United States Constitution* and Section 14 of Article III of the *West Virginia Constitution,* a testimonial statement is, generally, a statement that is made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."

Syl. Pt. 8, *Mechling*. In this instance, the statement in question was not given to a police officer in response to interrogation; it was given to a nurse in order for the victim to receive treatment. The circumstances surrounding the collection of the statement clearly demonstrate that Nurse McCort questioned the victim in an attempt to provide the proper medical care. Therefore, we find that this statement is non-testimonial. *See State v. Surbaugh*, 230 W.Va. 212, 224, 737 S.E.2d 240, 252 (2012) (statements given in the midst of an ongoing medical emergency are non-testimonial).[2]

Finally, even if this Court were to find that the admission of this evidence were in error pursuant to the West Virginia Rules of Evidence, in syllabus point four of *State v. Helmick*, 201 W.Va. 163, 495 S.E.2d 262 (1997), we held that, "[a]n error in admitting hearsay evidence is harmless where the same fact is proved by an eyewitness or other evidence clearly establishes the defendant's guilt." As discussed previously, there was sufficient independent evidence admitted at trial to prove petitioner's guilt beyond a reasonable doubt.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 20, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Justice Robin Jean Davis
Justice Brent D. Benjamin

---

[2] We also note that this evidence was admissible under Rule 803(4) of the West Virginia Rules of Evidence (statements made for medical diagnosis or treatment are not hearsay).